May it please the Court, my name is Ted Stepovich and I am representing Jim and Nancy Oliver who are doing business as Safety Waste Incinerators. Mr. Oliver is here at the table with me. Safety Waste Incineration is a small business owned and operated by the Olivers. For the most part, they are the business's only employees. They got into the waste incineration business in 1994 when they purchased that business real property and the incinerator, which is the coal-fired combustor, discussed throughout this dispute. They reside at the location of their business. Throughout the proceedings and in the briefing, the Olivers' operation has been referred to as a mom-and-pop business. They live at the location, they have a trailer home there, they're building a home, and they have their incinerator located right on the property. They are a business that doesn't have a compliance department, a government affairs department, a compliance department, a legal department, it's just Jim and Nancy Oliver. Sometime in the late 90s, they became aware of new laws that had been passed and regulation. To that end, they attended meetings with the EPA and discovered that there was new things coming down the road in regards to their coal-fired combustor. And so they started to take action. They did an analysis of what they needed, they looked at alternative ways to handle hospital medical infectious waste, and they also looked at the cost of those items. And as time moved on, they came to the conclusion that they could not afford nor get the financing for alternative technologies, the newer technologies. They looked to the Act itself and at the regulations and looked at the exemptions that existed. This was a process. This process, over time, they came to the determination, looking at the rules themselves, looking at the regulations, that they were entitled to a coal-fired combustor exemption. To that end, they then provided records as required under the Act and then the regulations. When they did this, they did it in air. They did not provide the amount of fuel gas used in their incinerator. In March of 2004, they first reported the weight of the fuel gas in their incinerator. In May 2007 is the first time they correctly calculated this, this amount of fuel gas that you're using, and that was based upon testing that they had done of that fuel gas. When you say correctly, that's an important adverb. Correct by what standard? Well, when I say correctly, I'm referring to what the components of the fuel gas itself was at that time. Is this the question of whether air counts as fuel? This is a question. That kicks in? Well, that follows. That question actually does follow from this. What the issue is and what we're dealing with here, as the court very well from the briefing, is what is counted as combustion air and what is counted towards what's in the fuel feed. So to use the term correctly, you mean correctly by the standards applied or the interpretation offered up on behalf of your client or correctly as the EPA has determined? Well, the first instance when I used correctly, I was just talking about what the components of that fuel gas was. In answering your question in regards to correctly, correctly is based upon, I don't want to keep going over that word, but is based upon the Oliver's interpretation of the rules and regulations as applied to the co-fired combustor. Now, even my level of science understanding is such that I understand that combustion is oxidation. Oxidation involves oxygen as a necessary component. It happens when I drive my car, too. But I don't call the oxygen part of the fuel. I know there's a carburetor in there and mixes it up somehow, but when I think of fuel, I think about what I've pumped into the fuel tank. The EPA has taken the position that the air doesn't count when you calculate your fuel, and you've taken the position that air does properly count. Every one of these fuels, and whether you entail it as fuel gas or you call it the hospital medical infectious waste itself or any other items that you burn in the incinerator, is included as fuel. A component of every one of those fuels is oxygen, is air. There are more than just the part that ignites. They are either mixtures or compounds. The example you use of a car is that petrol or that gas has oxygen as a portion of it, and the combustion air comes through the carburetor. Well, Mr. Sedler, what are we supposed to do with the attachment to your motion to supplement the record that you filed in March? The attachment is a memo from the Environmental Protection Agency to some of its regions and having to do specifically with this question of whether air is a fuel or not. You filed this, didn't you? Yes, I did. On page two of this memo, of the attachment, it says, the term fuel feed stream in aggregate quite simply means all the materials fed to the incinerator. This term therefore includes fuels, hospital, medical infection waste, and other waste materials. It does not include combustion air. Combustion air is neither a fuel nor a waste material. What do we do with that? Well, there's one portion of that sentence, the first sentence, that I think is important. That are fed to the incinerator as the feed stream. That is why the distinction is made in the briefing as to where the mixture occurs and how that gas fuel is fed into the incinerator. There are three feeds coming in where the mixture exists, and that's where the gas fuel comes in. There are 27 different openings in the fuel box itself, or in the incinerator itself, where combustion air is allowed, which controls how hot it burns, or the speed of the burn itself. The mixture that is created, as has been pointed out, is a low BTUU fuel, which enhances the burn time in the box, a cleaner burn, a longer burn, a more environmentally safe burn. So the point that is being made is that once you have this mixture, you've changed, you're basically, and this is where we went back and forth within the district court regarding the court calling this methane. What, in fact, is it's natural gas that is mixed with atmospheric air to dilute that natural gas to lower the BTUU level. That is what is fed and burned in the box, that combination. When the air comes in as combustion air on the site, it's not part of the fuel in that instance. It's where it is in relationship to the incinerator and how it is fed in. One of the things that is important to note is that… Are you saying that this air is fed in, mixed with fuel, so therefore it's part of the fuel? It becomes a fuel, a separate gas unto itself, yes. Separate fuel gas unto itself. If it's introduced in order to reduce the BTUU, it's almost like a dilutant. It's not itself part of the fuel, isn't it? It becomes part of the fuel. That is, in fact, what was measured when we sent it out to the lab. That's the components of the fuel. When you see in the brief, and I think it's laid out in the reply brief, when you see it measures the parts, the percentages, you're no longer measuring just… It doesn't break it down to natural gas and the atmospheric air mixture. It has it broken down to methane as well as to oxygen all the way through. Let me ask a different, wholly different question. What we're really concerned about is this exception for incinerators where medical waste comprises less than 10 percent of the total weight burned, right? Okay. What else, what does your client burn other than medical waste here? They burn ordinary garbage, ship's waste. They will, there's just a variety, whatever they can get a contract for. They do work for the municipality of Anchorage. Okay. So those are the things that you're incinerating. Correct. And you agree that of the things that you're incinerating, which include the garbage and waste and the medical waste, that the medical waste is more than 10 percent of what is being incinerated, the stuff that you put in to be incinerated? No, not necessarily. The… I guess… I don't know why we're talking about the air then if that's not the case. No, what I, and maybe I misunderstand the question, what is being incinerated, everything that goes into the incinerator itself is fuel, whether it's garbage or otherwise. But your business is not burning fuel. You don't make your money by burning fuel. That's a cost. That's part of the process. The burn. So you're putting stuff in to be burned that people pay you to get rid of. I assume that's the business. And that includes garbage waste and medical waste. Correct. Now, of the things that you're putting in to be burned that you get paid for, it would appear that the medical waste is more than 10 percent of that. Isn't that why we're here? Well, that's the… If I understand it correctly, I'm not really… I believe that, yes, that would be the case, because then what the exemption includes, the additional fuel that's brought in. Yeah. The fuel gas that's brought in in the calculation. And so with that calculation, I believe it came somewhere around six, six and a half percent, something to that effect, with the addition of the fuel gas. All right. So the point here, really, I think that I would like to make in the brief time I have before I step down here, is that I think the briefing covers it, but I really want to emphasize the now definition that has been put forth by the EPA in this case, versus what is actually in the regulations and how the regulations direct you to look at these wider definitions. We have a small operation that is trying to interpret these rules, interprets them in what we believe is a fair and accurate manner, and being told by the EPA that, with very little guidance, I think we put that into the briefing as well, but very little guidance that, no, it doesn't work that way. Mr. Oliver, who is a petroleum engineer, looks at what they've said, looks at the regulations, and says, no, you are wrong. Now we go back and forth, but this really points out the fact that this is a factual dispute. There are genuine material issues of fact. To be of deference to the EPA in regards to their definition, when there really isn't any definition, that their own regulations direct them to another part to look at these, and we put those in the brief and I'm not going to go through them. And then to say, to allow them, to give them deference on these definitions under this circumstance, we do not believe is fair, nor is it something that you can grant summary judgment on. Once again, I would just point that this supplement that we provided from Porter, basically talks about it being the fuel stream, and that is what is provided here through the mixers is a fuel gas into the fuel stream. I'll reserve, I guess, I have two minutes. We'll give you 30 seconds for a vote. Thank you. May it please the Court. My name is Andrew Mergen. I'm here from the Department of Justice on behalf of EPA. With me at Council table is Julie Vergeron from EPA Region 10. We think that this, our submission is that this case is really fairly simple, and it's about the proper interpretation of the exemption, and I think exemption is a key term here, for co-fired combustors in the medical waste, for medical waste incinerators. And that co-fired combustor exemption is defined as an incinerator that burns medical waste with other fuels or waste where the medical waste comprises 10% or less of the weight of the materials combusted. This is really a pretty straightforward administrative law question and a question of regulatory interpretation. This is an exemption, and I think that's important to bear in mind, and that's laid out in some detail in the regulatory preamble for these regulations that we cite in footnote 15, where the idea behind this exemption was to allow other types of incinerators regulated under other regimes, like municipal incinerators, to deal with a small portion of medical waste without being pulled into that regulatory rubric. The suggestion offered by the Olivers that they somehow fall within this exemption because the combustion air ought to be counted into the fuel weight would entirely, would lead to an absurd result, would be entirely contrary to the regulatory history here. And it's simply not tenable. Now, let me understand this. I have trouble with this language. Sure. Subject to an enforceable requirement limiting the unit to combusting a fuel feed stream, 10% or less of the weight is comprised in aggregate of hospital waste, et cetera. Right, correct. Now, the fuel feed stream includes what, the waste and whatever else they're burning. Right. And they're incinerating, and the fuel. That's right. And, you know, regrettably, you know, the regulatory term here, fuel feed stream, is not defined. Yeah, that's right. When I picked up this case, that was the, I was disappointed that it wasn't. But there are a number of very cogent explanations for this term in the record, including the Porter memo that Judge O'Scanlan mentioned that explains this. There's a very, I think, comprehensive discussion on pages 120 and 121 of the SCR, where the EPA regulators are explaining to the Olivers in that particular case that what is intended by this definition is the fuel and the waste. And I think what's important to understand about the incinerator in this particular case is that they purchased natural gas to use as a fuel. And in March of 2004, they calculated that the weight of that natural gas is part of their analysis. And we submit that that was correct. That natural gas falls clearly within the regulatory purview. What does not fall within it is the combustion air. And Judge Griffin's example is very apt. Well, that's what I'm trying to figure out with the fuel that you put in. How does the air get in there? Okay, so I think the best place to look maybe in the record is around ER 144 and around those pages. ER 144 is an EPA document that explains to some extent how this particular incinerator works. And air comes into this incinerator from sort of five locations. There are three sort of streams of air, and then there are vents top and bottom. And then there's the natural gas itself, which is pumped into the incinerator unit. All of this air serves exactly the same purpose. It is to aid combustion. We all understand that that's what air does in fire. It's not fuel. It is necessary to the combustion process. And what the sort of submission made by the Olivers is that because there are three sources of air that come in at the same time as the natural gas, that somehow that air ought to be included as the feed fuel stream. It's just simply untenable. You know, you heard Mr. Stepovich's response to my question about that Porter memo, and he reads it differently than you do. Right, yes. And he talks about this fuel feed stream, which suggests perhaps there's an issue of fact here. What's your response? Well, I think not an issue of fact, Your Honor, because the question really does boil down to is, how do you treat air as it's utilized in an incineration process? And our position is that air is not included in the calculation. Combustion air is not. That is simply a question of the correct interpretation of EPA's regulations. As the district court recognized, this is not a question of fact. This is a question about what co-fired combustor, what the co-fired combustion exemption means. And, you know, if there were any confusion about this, and we submit that there's really not, that for a number of reasons this can't be what EPA is telling this court that it's not what it intended. It can't be how Congress intended to deal with this, because Congress singled out these wastes specifically in the Clean Air Act, and the exemption that the construction of the exemption that the Olivers proposed would render it a nullity, perhaps. You could always pump more air into it. But even if this were closed, right, this, as an admin law question, the tie goes to the government. The government is entitled to deference here, and it's entitled to deference for a number of reasons. First off, it has construed its regulations in this litigation in advance of its interpretation, and that's fine under Auer v. Robbins. It's fine under the Supreme Court's recent decision in Cora v. Alaska. It's also true that this is an exemption, and exemptions are intended to be interpreted narrowly. And, you know, Mr. Stepovich also referred to it as an exemption, and we don't interpret, the law does not construe exemptions broadly. And finally, this is a technical area. It requires the application of EPA's expertise, and deference is appropriate for that reason as well. And, you know, the contrary, the Oliver submission would completely undermine not only this exemption, but as discussed, I think, on page 38 of our brief, that where co-fired combustor is used in other portions of the Clean Air Act. It would completely undermine that. You know, one thing that Mr. Poehler makes in his memo, as I was reading it through, and, you know, it's true that I wish he had also directly spoken to the fuel feed stream issue, but there is no doubt, I think, between the memo as a whole as to what he was talking about. He is saying that error is not part of the analysis. But one of the things that he says that I think also merits this Court's attention at the very end of the memo, is he says, nobody has ever suggested this. I've been working in this area for a very long time. No one has ever come to EPA and suggested that this error somehow ought to be applied in this exemption. And the reason for that is because it patently cannot be interpreted that way. And if the Court has no other questions, I will sit down. Thank you very much. Mr. Deane. Very briefly. Thank you, Your Honor. First, to point out that natural gas is not fed into the firebox here. It is a mixture that is fed in. That this is the design of this incinerator that was purchased by them. The mixtures were located there the whole time. Mr. Oliver, in the earlier calculations, was wrong in regards to that, and he had corrected himself to the EPA concerning the reference to natural gas because there is actually a mixture of a gas mixture that is being made. Finally, just as to the point of the EPA and its interpretation of its regulations, there are factual issues here that exist concerning the application as well as what is located at the fuel feed here. We ask the Court to consider that in its rule. Thank you. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned.
judges: Schroeder, O'scannlain, Clifton